UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Judy Sampson,                                          Case No. 3:12-cv-00824

        Plaintiff

    v.                                               MEMORANDUM
                                                     OPINION & ORDER

Sisters of Mercy of Willard, Ohio, et al.,

        Defendants.

## I.    INTRODUCTION

Plaintiff Judy Sampson sued Defendants Sisters of Mercy of Willard, Ohio ("Mercy Willard"), Mercy Health Partners, and Catholic Health Partners, alleging the Defendants discriminated against her on the basis of her age. Sampson and Mercy Willard filed cross-motions for summary judgment regarding the merits of Sampson's age discrimination claims. (Doc. No. 47 and Doc. No. 45). Mercy Health Partners and Catholic Health Partners filed a separate summary judgment motion, arguing in part they are not liable to Sampson because they are not her employer. (Doc. No. 43). For the reasons stated below, (1) Sampson's motion is denied; (2) Mercy Willard's motion is granted in part and denied in part; and (3) Mercy Health Partners and Catholic Health Partners' motion is granted.

## II.    BACKGROUND

Sampson began working at the Mercy hospital in Willard, Ohio, in April 1988, as a technologist in the Radiology department. She eventually reached the Lead CT Technologist position. In this position, Sampson primarily was responsible for performing CT scans, while also

assisting with mammography, radiology, and ultrasound technologist duties. Sampson had several supervisors during the course of her employment. The last, Barbara Fry, began supervising Sampson when Fry became the Manager of the Mercy Willard Radiology Department in November 2008. Prior to Fry's arrival in the Radiology Department, Sampson had no formal disciplinary history as an employee at Mercy Willard.

Mercy Willard utilizes a four-step, progressive disciplinary policy that provides for (1) verbal warnings, (2) written warnings, (3) suspensions without pay, and (4) termination. (Doc. No. 45-4 at 6-7). While this is the expected course in response to employee misconduct, it is not a mandatory procedure, as Mercy Willard "reserves the right to determine the appropriate manner of discipline for any particular situation." (Doc. No. 45-4 at 4). Hospital supervisors also use informal "employee discussions" to address violations of hospital policies.

Between April 1988 and November 2008, Sampson had received one employee discussion. Between November 2008 and December 27, 2010, when she was terminated, Sampson received 26 employee discussions, 2 verbal warnings, 2 written warnings, and 3 90-day action plans. The parties offer competing views of this drastic change in Sampson's disciplinary record. Sampson asserts Fry did not like her because Sampson was the oldest technologist in the Radiology Department by a significant margin, and consequently treated Sampson's mistakes much more harshly than those made by her coworkers. Mercy Willard does not dispute that Sampson's performance was satisfactory throughout most of her career, but contends each instance of discipline was legitimate, arising from "Sampson's failure to follow department policy/procedure/protocol and her failure to consistently perform the responsibilities of her position." (Doc. No. 45 at 7). Mercy Willard contends it took numerous steps to assist Sampson and that her discipline and ultimate termination were free from discriminatory animus. Shortly after implementing the second 90-day action plan in May 2010, Mercy Willard referred Sampson to a physician for a medical evaluation, seeking "an assessment of whether or not Ms. Sampson [was] able to perform her job duties" in light of her

2

"recent errors." (Doc. No. 45-16). This testing apparently did not identify any medical explanation. (Doc. No. 51-1 at 132).

Mercy Willard terminated Sampson's employment on December 27, 2010, "for continued occurrences of failure to satisfactorily perform the responsibilities of her position." (Doc. No. 45-3 at 1). Sampson was 56 years old when she was terminated. She was replaced as Lead CT Tech by Mike Slone, who was 32 years old at the time of his promotion. (Doc. No. 47-11 at 10). Sampson filed suit, asserting the following claims of age discrimination under federal and state law: (1) violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*; (2) age discrimination in violation of Ohio Revised Code § 4112.02(A); and (3) aiding and abetting age discrimination in violation of Ohio Revised Code § 4112.02(J). (Doc. No. 22 at 4-6).

### III. STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

### IV. ANALYSIS

Mercy Health Partners and Catholic Health Partners argue they are entitled to summary judgment because they do not meet the definition of an "employer" under the Age Discrimination in Employment Act or Ohio Revised Code Chapter 4112. They also argue Sampson cannot

produce evidence to support her aiding-and-abetting claim.  I agree, and grant their motion for summary judgment.

Sampson and Mercy Willard both seek summary judgment on counts 1 and 2 of Sampson's complaint.  Neither is entitled to summary judgment because there is a genuine dispute of material fact as to whether Mercy Willard's explanation for disciplining and terminating Sampson is a pretext for unlawful discrimination.  Mercy Willard also seeks summary judgment on count 3 of Sampson's complaint.  I conclude Mercy Willard is entitled to summary judgment on Sampson's aiding-and-abetting claim as a matter of law.

Catholic Health Partners and Mercy Health Partners object to some of the evidence Sampson offers in opposition to their summary judgment motion.  They contend Sampson improperly cites to deposition testimony from Lynn Detterman, the President and Chief Executive Officer of Mercy Willard, that is not based on her personal knowledge and that Internet printouts of webpages from the Catholic Health Partners and Mercy Health Partners' websites Sampson submits are unauthenticated.  (Doc. No. 97 at 2-4).  They also object to Sampson's use of a printout of the Linked-In webpage of Andrea Price, an executive with Catholic Health Partners and Mercy Health Partners.  Rule 56(c) permits a party to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2); *see also Alpert v. United States*, 781 F.3d 404, 409 (6th Cir. 2007) (holding evidence submitted to oppose a summary judgment motion "must be admissible").

The problems with the proffered portions of Detterman's testimony are clear.  Sampson deposed Detterman as a fact witness only, and not as a corporate representative under Rule 30(b).  Detterman's response to one of the deposition questions about printouts from the Catholic Health Partners' and Mercy Health Partners' websites sums up the point: "I don't have any way of verifying that the information is accurate.  You know, this isn't part of the scope of what I do on a daily basis.  My scope would be more Mercy Willard . . . .  So I can't say whether it's accurate or inaccurate."

4

(Doc. No. 48-1 at 12). Detterman is the President and CEO of Mercy Willard Hospital. (Doc. No. 48-1 at 7). She is not an executive for Catholic Health Partners and Mercy Health Partners. Sampson fails to identify any basis upon which Detterman might be competent to testify on behalf of either company or attest to the accuracy of statements made on their websites. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).

Moreover, the Sixth Circuit repeatedly has held "unauthenticated documents do not meet the requirements of [former] Rule 56(e)." *Id.* (citing cases). Sampson offers no evidence that might support a finding the documents are what she claims they are. Fed. R. Evid. 901(a). Detterman could not testify to the source of the documents she was shown during her deposition or the information they contained, and the webpages plainly are not public records. Fed. R. Evid. 901(b)(1), (7).

Finally, the website printouts are inadmissible hearsay. With the exception of Price's Linked-In page, there is no suggestion as to who made any of the statements in those printouts, and Sampson plainly offers them to prove the truth of the matter asserted in those statements. Fed. R. Evid. 801. Sampson offers no evidence to show the statements are not hearsay or fall with an exception to the hearsay rule. *See* Fed. R. Evid. 801(d)(2); Fed R. Evid. 803. I will not consider the portions of Detterman's deposition testimony about the Catholic Health Partners and Mercy Health Partners printouts, the printouts themselves, or the information from the printout of Price's Linked-In page in ruling on the motion for summary judgment.

A. **MERCY HEALTH PARTNERS AND CATHOLIC HEALTH PARTNERS ARE NOT EMPLOYERS**

Sampson first contends the motion should be denied because Catholic Health Partners and Mercy Health Partners admitted in response to an interrogatory "they were properly named defendants in this action . . . ." (Doc. No. 92 at 5). Sampson misconstrues this admission. The interrogatory in question sought to determine whether Sampson had gotten the name of the corporations correct, and did not ask the Defendants to admit liability. (Doc. No. 47-11 at 14)

5

("State whether Plaintiff has <u>correctly identified</u> the Defendants in the Complaint and, if not, state in which way Defendants have been <u>incorrectly identified</u>.") (emphasis added).  The Defendants' concession that Sampson identified the correct name of each Defendant has no impact on their liability.

Title VII and § 4112.02(A) prohibit an "employer" from discriminating because of age.  In order to show a defendant is liable, the plaintiff first must show the defendant is her employer.  The plaintiff can do this in one of two ways.  She may show the defendant formally is her employer and thus falls squarely within the statutory definitions.  *See* 42 U.S.C. § 2000e(b) ("The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person . . . ."); Ohio Rev. Code § 4112.01 ("Employer" includes . . . any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of an employer.").  The parties do not dispute Mercy Willard was Sampson's formal employer.

The second way is to show that a person or entity that did not directly employ the plaintiff has a sufficiently significant relationship with the plaintiff's employer to be considered an "employer" under federal and state law.  The Sixth Circuit has identified three approaches by which courts may address this issue: (1) the "single employer" or "integrated enterprise" approach; (2) the "joint employer" approach; and (3) the "agency" approach.  *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997).  Ohio courts have engaged in a similar analysis when considering a plaintiff's state law claims.  *See, e.g., Photinos v. I-X Ctr. Corp.*, 1999 WL 342239, at *6 (Ohio Ct. App. May 27, 1999); *Wilmot v. Forest City Auto Parts*, 2000 WL 804616, at *3 (Ohio Ct. App. June 22, 2000); *Clegg v. Quarto Min. Co.*, 1989 WL 33684, at *1 (Ohio Ct. App. April 5, 1989).  Sampson argues Catholic Health Partners and Mercy Health Partners are liable under the single-employer and joint-employer approaches.

6

1. **THE SINGLE-EMPLOYER APPROACH**

The single-employer approach seeks to determine "if two nominally independent entities are so interrelated that they actually constitute a single integrated enterprise . . . ." *Swallows*, 128 F.3d at 993 n.4. There are four factors for courts to consider under the single-employer doctrine: "(1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control." *Id.* at 993-94 (citing *York v. Tenn. Crushed Stone Ass'n*, 684 F.2d 360, 362 (6th Cir. 1982)). None of these factors are conclusive, though the third factor is a primary consideration. *Swallows*, 128 F.3d at 994 (citations omitted). Sampson does not offer evidence to create a genuine dispute as to any of these factors.

Sampson argues the first two factors are met because Catholic Health Partners and Mercy Health Partners have "managerial oversight" over Mercy Willard, and the Defendants "share nearly identical company logos, engage in system-wide collaborative training, and look to and seek approval from [Catholic Health Partners] on matters relating to sentinel events and patient incident reporting." (Doc. No. 92 at 17-18). Even if I view these assertions in the light most favorable to Sampson, they do not show an interrelation of operations – which typically is found where the companies have joint bank accounts, joint payroll and accounts-receivable services, and utilize the same office – or common management – which typically involves a showing of shared officers or a number of overlapping board members. *Swallows*, 128 F.3d at 994-95. While some courts in other circuits have considered a common logo to be evidence of interrelation of operations, those courts have done so only in combination with a substantial amount of other evidence showing the companies operated as a single entity. *See Smith v. Jones Warehouse, Inc.*, 590 F. Supp. 1206, 1208 (N.D. Ill. 1984); *E.E.O.C. v. Dolphin Cruise Line, Inc.*, 945 F. Supp. 1550, 1553-54 (S.D. Fla. 1996).

Sampson claims the third factor is met because the policies adopted by Catholic Health Partners and Mercy Health Partners apply to Mercy Willard and because Deborah Morelli, a

7

member of the Catholic Health Partners in-house legal department, "active[ly] participat[ed]" in Sampson's discipline and ultimate termination. (Doc. No. 92 at 18-19). The control-of-labor-relations factor requires evidence that the parent company had "authority to *hire* and *fire*" the subsidiary's employees. *Swallows*, 128 F.3d at 995 (emphasis in original). Sampson fails to present any evidence to support her theory that a member of the parent company's internal legal department had any authority to order or prohibit the termination of an employee of the subsidiary. The sole case she cites in support of her argument, *Bohannon v. Baptist Mem'l Hosp.-Tipton*, 2010 WL 1856547 (W.D. Tenn. May 7, 2010), provides no help, as the *Bohannon* court found a genuine dispute of material fact where the hospital's executive consulted with the Human Resources Director at the hospital's parent company, not in-house counsel. *Id.* at *4. There is no evidence Catholic Health Partners or Mercy Health Partners "controlled the decision" to fire Sampson "or made any other final decision with regard to [her] employment." *Swallows*, 128 F.3d at 995. Sampson admits as much when she discusses "the disciplinary and termination decisions made by Fry, Rizzo, and Olson at Mercy Willard Hospital." (Doc. No. 92 at 19).

Sampson's citation to *Ahern v. Ameritech Corp.*, 739 N.E.2d 1184 (Ohio Ct. App. 2000), also does not establish centralized control of labor relations. The *Ahern* court, which did not apply the single-employer approach, affirmed the trial court's denial of Ameritech's motion for a directed verdict on the issue of whether Ameritech was the plaintiff's employer. While the plaintiff was a manager for a division of an Ameritech subsidiary, the court pointed to evidence that Ameritech corporate security investigated the plaintiff's alleged misconduct, which was considered to be a violation of Ameritech policy, and escorted him from the building. *Ahern*, 739 N.E.2d at 1193. The plaintiff's supervisor, who worked for the same division of the subsidiary, testified she decided to terminate the plaintiff because of the duty she felt she had to Ameritech, rather than her direct employer. *Id.* at 1193-94. Sampson has not presented similar evidence of parent-company involvement here.

Sampson also contends that the discipline she received and her ultimate termination were "in clear violation" of Catholic Health Partners' policy. (Doc. No. 92 at 20). To the extent this allegation has any bearing on the single-employer analysis, it weighs in favor of the Defendants.

Finally, Sampson has not produced evidence to meet the fourth factor of the single-employer approach. This factor requires proof that one of the entities is a sham. *Swallows*, 128 F.3d at 995 (quoting *E.E.O.C. v. Wooster Brush Co. Emps. Relief Ass'n*, 727 F.2d 566, 572 (6th Cir. 1984) ("If neither of the entities is a sham then the fourth test is not met.")). In *Wooster Brush*, the court concluded the Relief Association was not a sham despite the fact that the Wooster Brush Company "contributed fifty percent of the Association's financial budget." *Wooster Brush*, 727 F.2d at 572. Sampson's claim that Catholic Health Partners and Mercy Health Partners exert common ownership and financial control over Mercy Willard because Mercy Willard must "submit its budget for approval" falls far short of the offer of proof in *Wooster Brush*. (Doc. No. 92 at 18).

**2. THE JOINT-EMPLOYER APPROACH**

The joint-employer approach applies "where two or more employers exert significant control over the same employees." *N.L.R.B. v. Browning-Ferris Indus. of Penn., Inc.*, 691 F.2d 1117, 1124 (3rd Cir. 1982). This approach "recognizes that the business entities involved are in fact separate but that they *share* or co-determine those matters governing the essential terms and conditions of employment." *Swallows*, 128 F.3d at 933 n.4 (quoting *Browning-Ferris*, 691 F.2d at 1123)). In determining whether entities are joint employers, courts consider "an entity's ability to hire, fire[,] or discipline employees, affect their compensation and benefits, and direct and supervise their performance." *E.E.O.C. v. Skanska USA Bldg., Inc.*, 550 F. App'x 253, 256 (6th Cir. 2013) (citing *Carrier Corp. v. N.L.R.B*, 768 F.2d 778, 781 (6th Cir. 1985)). While the analytical framework of this approach does not seem appropriate for this case as a matter of law – the Defendants have never claimed to be wholly-independent entities – I also conclude Sampson fails to show a genuine dispute of material fact as to whether the Defendants are her joint employer. As I stated above,

9

there is no evidence Catholic Health Partners or Mercy Health Partners had the ability to hire, fire, or discipline Sampson, to affect her compensation, or to direct and supervise her performance.

Sampson, relying on *Williams v. City of Columbus*, 892 F. Supp. 2d 918 (S.D. Ohio), argues "an issue of fact is raised where a subsidiary entity turns to its parent company for legal advice about an employment situation." (Doc. No. 92 at 21). I do not find *Williams* persuasive for several reasons. First, the defendants in that case were the City of Columbus and the Franklin County Municipal Court; city and county governments do not have a parent-subsidiary relationship. Second, the *Williams* court's discussion of the role of the city's attorney was dicta – "William's evidence that the Assistant City Attorney was directly involved . . . also <u>seems to create</u> a genuine issue of material fact." *Williams*, 892 F. Supp. 2d at 931 (emphasis added). The *Williams* court denied the defendants' summary judgment motion after the plaintiff produced evidence the City issued her paycheck, handled her benefits, provided her with a badge bearing the City's seal, and made a representation to the Ohio Public Employees Retirement System that the plaintiff was its employee. *Id.* at 930-31. Sampson does not offer any similar evidence here.

My conclusion that Mercy Health Partners and Catholic Health Partners are not Sampson's employer under Ohio law does not resolve Sampson's aiding-and-abetting claim under Ohio Revised Code § 4112.02(J), as that subsection is not limited to employers but assigns liability to any "person." *See* Ohio Rev. Code §§ 4112.01(A), 4112.02(J). I will address that claim below.

**B. THERE IS A GENUINE DISPUTE AS TO SAMPSON'S AGE DISCRIMINATION CLAIMS**

A plaintiff establishes a prima facie case of age discrimination by showing (1) she was at least 40 years old at the time of the alleged discriminatory act; (2) she was otherwise qualified for her position; (3) she suffered an adverse employment action; and (4) she was replaced by a younger person. *Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 940 (6th Cir. 1987); *see also Coryell v. Bank One Trust Co. N.A.*, 803 N.E.2d 781, 785 (Ohio 2004) (applying federal case law to an age discrimination claim under Ohio law). Sampson has met her prima facie burden by showing she was a member of

the protected class, she was qualified for her position, she suffered an adverse employment action, and she was replaced by a substantially younger employee. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 284 (6th Cir. 2012).

Once the plaintiff has established her prima facie case, the defendant has the burden of producing a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 285. Mercy Willard contends it terminated Sampson for a nondiscriminatory reason – "her repeated failure to correctly and satisfactorily perform fundamental aspects of her job." (Doc. No. 94 at 9).

After the defendant meets its burden of production, the plaintiff has the burden of proving "the stated reason for her termination is pretextual" because there is "'sufficient evidence from which a jury could reasonably reject [the employer's] explanation for why it fired her.'" *Blizzard*, 698 F.3d at 285 (quoting *Chen v. Down Chem. Co.*, 580 F.3d 294, 400 (6th Cir. 2009)). The plaintiff may do so by proving the proffered reasons (1) have no basis in fact, (2) did not actually motivate her termination, or (3) were insufficient to motivate her termination. *Blizzard*, 698 F.3d at 285. The first category in effect requires the plaintiff to show "the proffered bases for the plaintiff's discharge never happened," while the second "requires that the plaintiff 'admit[ ] the factual basis underlying the employer's proffered explanation and further admit[ ] that such conduct could motivate dismissal.'" *Chattman v. Toho Tenax Am. Inc.*, 686 F.3d 339, 349 (6th Cir. 2012) (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). A claim that the proffered reasons were insufficient to motivate termination typically is supported by "evidence that other employees, particularly employees outside the protected class, were not disciplined even though they engaged in substantially identical conduct to that which the employer contends motivated its discipline of the plaintiff." *Chattman*, 686 F.3d at 349 (quoting *Manzer*, 29 F.3d at 1084). "[T]he third type of pretext is a direct attack on the credibility of the employer's proffered motivation for disciplining the plaintiff and, if shown, 'permits, but does not require, the factfinder to infer illegal discrimination . . . .'" *Chattman*, 686 F.3d at 349 (quoting *Manzer*, 29 F.3d at 1084).

11

The first two categories of demonstrating pretext are not applicable here.  Sampson admits the factual basis for some of the incidents for which she was disciplined, though she denies the discipline was appropriate, and also denies some of the incidents occurred as Mercy Willard describes them.  (*See, e.g.,* Doc. No. 47-2 at 14 (asserting other employees "were not written up or disciplined for making similar, if not identical, mistakes as [Sampson]"), Doc. No. 47-2 at 15 ("Fry wrote incomplete disciplinary reports that completely mischaracterized the events and [Sampson's] conduct.")).

Sampson contends Mercy Willard's proffered explanation for terminating her is a pretext for age discrimination because a younger coworker was not disciplined for similar incidents.  Sampson identifies four instances between July and August 2010 in which Fry counseled Mike Slone for patient-care and work-performance errors, but which did not result in formal discipline: (1) failing to ensure a diabetic patient had undergone required testing prior to a CT scan; (2) failing to ask female patient whether she was pregnant prior to performing a test; (3) incorrectly performing testing as described in a doctor's orders; and (4) combining two physician-ordered tests into one scan without obtaining the doctor's approval.  (Doc. No. 64-1 at 391-94).  By comparison, on January 26, 2010, Fry placed Sampson on a 90-day action plan after four incidents over a three-month period in late 2009: (1) incorrectly performing testing as described in a doctor's orders; (2) failure to include mammogram films in a patient's file; (3) failing to inform another radiologist that an ultrasound patient recently had a positive pregnancy test; and (4) failing to obtain a full medication list from a patient prior to a CT scan and failing to include certain forms in the patient's file.[1]  (Doc. No. 45-9).

Though Mercy Willard criticizes Sampson's other pretext arguments involving patient-care reporting programs, post-termination evidence, and allegedly "[u]nknown and [u]nassigned [i]ncidents," it does not attempt to distinguish Slone's substantially identical conduct or Fry's

---

[1]  During this time period, Fry also twice spoke with Sampson about Sampson's alleged failure to comply with Mercy Willard's patient-confidentiality policy.  (Doc. No. 45-5 and 45-7).  Fry did not include these discussions in the 90-day action plan, though she subsequently included them in the Final Written Warning she issued to Sampson on September 29, 2010.  (Doc. No. 45-8 at 3).

12

disparate response. (*See* Doc. No. 95 at 3-8). The record evidence reflects that the first incident mentioned in the first 90-day action plan also was the first instance in which Sampson was formally disciplined after nearly 20 years at Mercy Willard. Mercy Willard relies on this action plan as the foundation for Sampson's subsequent discipline and ultimate termination, but has not offered any explanation for the different responses to Sampson's and Slone's conduct.

Sampson also asserts Fry told her she was "too old to cry." (Doc. No. 53-1 at 170). While this comment alone does not establish Mercy Willard's proffered reason is pretextual, it may lead a jury to conclude Sampson's age was the reason she was treated differently than a coworker outside the protected class. Sampson identifies a genuine dispute as to whether Mercy Willard's "proffered justification was pretext for [age] discrimination." *Chattman*, 686 F.3d at 350.

Sampson, however, is not entitled to summary judgment. In order to prevail on her motion, Sampson must show there is no genuine dispute of material fact and establish a jury would "believe the plaintiff's explanation of intentional discrimination." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993) (emphasis omitted). Though Sampson points to evidence of many instances in which non-protected employees allegedly were treated more favorably than she was, that evidence does not conclusively establish that Sampson was treated differently because of her age. An employer is permitted to "make a subjective judgment to [discipline or terminate] an employee for any reason that is not discriminatory." *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 70 (6th Cir. 1982) (quoting *Walter v. KFGO Radio*, 518 F. Supp. 1309, 1314 (D. N.D. 1981)). While Sampson contends Fry did not like her, and treated her differently, because of her age, a jury reasonably could conclude Fry treated Sampson differently simply because Fry did not like her. Both Sampson's and Mercy Willard's motions for summary judgment on Sampson's age discrimination claims are denied.

C.     SAMPSON'S AIDING-AND-ABETTING CLAIMS FAILS AS A MATTER OF LAW

Sampson alleges the "Defendants aided, abetted, incited, compelled, and/or coerced the intentional discriminatory treatment of Plaintiff . . . in violation of Ohio Revised Code Section 4112.02(J)."  (Doc. No. 22 at 6).  Under that subsection, it is "an unlawful discriminatory practice":

> For any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with this chapter or any order issued under it, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice.

Ohio Rev. Code § 4112.02(J).  While this section is broader than § 4112.02(A), as it applies to "persons" and not only "employers," I conclude Sampson has not presented evidence to support her claim and the Defendants are entitled to summary judgment.

As the parties note, Ohio courts have offered little guidance on § 4112.02(J) claims.  Another federal court in this district, in analyzing an aiding-and-abetting claim, noted Ohio courts "generally define 'aid' as 'to assist' and 'abet' as 'to incite or encourage'" while also construing "aiding and abetting as an intentional act . . . ." *Luke v. City of Cleveland*, at *8 (N.D. Ohio Aug. 22, 2005) (quoting *Horstman v. Farris*, 725 N.E.2d 698, 707 (Ohio Ct. App. 1999) and *State v. Stepp*, 690 N.E.2d 1342, 1347 (Ohio Ct. App. 1997)).  "[I]n order to aid or abet, whether by words, acts, encouragement, support[,] or presence, there must be something more than a failure to object unless one is under a legal duty to object." *Horstman*, 725 N.E.2d at 707 (quoting *Stepp*, 690 N.E.2d at 1347).

In her brief in opposition to the Defendants' motion for summary judgment on this claim, Sampson argues Diana Olson, Christina Rizzo, and Lynn Detterman "were aware" of Sampson's complaints about Fry but "purposefully chose to ignore . . . Sampson and condone Fry's disparate treatment towards her."  (Doc. No. 96 at 24).  None of these individuals – all of whom work for Mercy Willard – are named as defendants in this action.  (*See* Doc. No. 47-11 at 11 (Olson was the Chief Human Resources Officer at Mercy Willard); Doc. No. 51-1 at 4 (Rizzo was the rural division

14

senior director of professional services at Mercy Willard and Mercy Tiffin Hospitals); Doc. No. 48-1 at 7 (Detterman is the President and CEO of Mercy Willard)). To the extent Sampson seeks to hold their employer liable for their actions, she already has brought a claim under § 4112.02(A). *See Hauser v. Dayton Police Dep't*, 17 N.E.3d 554, 556-58 (Ohio 2014) (Section 4112.02(J) "holds individual employees liable for their participation in discriminatory practices."); *Cummings v. Greater Cleveland Reg'l Transit Auth.*, --- F. Supp. 3d ---, 2015 WL 410867, at *5 (N.D. Ohio Jan. 29, 2015) (Plaintiff stated a plausible claim for relief when she "pleaded that the individual Defendants were involved in or actually made the decision to retaliate against her."); *see also Packard Motor Car Co. v. Nat'l Labor Relations Bd.*, 330 U.S. 485, 488-89 (1947).

Moreover, Sampson does not offer any evidence to show that Mercy Health Partners or Catholic Health Partners in any way aided or assisted Fry's allegedly-discriminatory actions. Mercy Willard cannot aid or abet itself in discriminating against Sampson. *Muhammed-Smith v. Psychiatric Solutions, Inc.*, 877 F. Supp. 2d 552, 564 (N.D. Ohio 2012); *see also Daudistel v. Village of Silverton*, 2014-Ohio-5731, at *9 (Ohio Ct. App., December 26, 2014) ("Generally, in the context of civil-liability, where all defendants, allegedly [co-conspirators], are members of the same collective entity, corporate or municipal, there are not two separate 'people' to form a conspiracy.") (citations omitted). I conclude the Defendants are entitled to summary judgment on this claim as a matter of law.

D. **COUNSEL'S REPRESENTATIONS**

There are a number of arguments, claims, and legal citations contained in the parties' summary judgment briefing that cause concern regarding the tenor and direction of this litigation.

Mercy Willard claims it "assumes" Sampson abandoned her aiding-and-abetting claim when she did not include it in her summary judgment motion and therefore "this Court should dismiss that count . . . ." (Doc. No. 94 at 27). The sole case Mercy Willard cites, *Dahlen v. Mich. Licensed Beverage Ass'n*, 132 F. Supp. 2d 574 (E.D. Mich. 2001), does not support Mercy Willard's argument.

15

In that case, the court correctly "decline[d]" to rule on the plaintiff's common-law unfair-competition claim where the plaintiff did not address the claim in her summary judgment motion or briefing.  *Id.* at 588, n.11.  Thus, the *Dahlen* court did not dismiss the claim.  There is no legal or logical justification for Mercy Willard's position, as a party is not required to raise every claim or issue in every motion or risk waiving it.   To the extent Mercy Willard's argument is meant to assert Sampson's claim should be dismissed for a failure to prosecute, there is no evidence to support the necessary implication that the omission of the aiding-and-abetting claim from Sampson's summary judgment motion was in bad faith, rather than as the result of a reasoned and strategic decision by her attorneys.  *See Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013).

Elsewhere in its briefing, Mercy Willard argues Fry's comment to Sampson that she was "too old to cry" is not evidence of age discrimination because "[a]mbiguous and arguably innocuous comments are insufficient to support a finding of discrimination."  (Doc. No. 98 at 5).  While Fry's alleged comment does not directly address Sampson's work performance, a jury reasonably could conclude it supports Sampson's claim of age discrimination.  More troubling, however, is what Mercy Willard's sentence omits.  Mercy Willard cites *Maletich v. La-Z-Boy Inc.*, No. 11-14615, 2013 WL 3328302, at *11 (E.D. Mich. July 2, 2013), in support of this argument.  Mercy Willard's sentence appears nearly verbatim in *Maletich*, except that the *Maletich* court stated "ambiguous and arguably innocuous comments 'are insufficient to support a finding of <u>direct</u> discrimination' . . . ." *Id.* at *11 (quoting *White v. Columbus Metro. Housing Auth.*, 429 F.3d 232, 239 (6th Cir. 2005)) (emphasis added).  Mercy Willard's omission of the word "direct" misrepresents both the letter and the spirit of the point of law it cites – a point made clear by the *Maletich* court itself, which observed the "ambiguous statement" was not direct evidence of discrimination because it required the factfinder to draw an inference.  *Maletich*, 2013 WL 3328302, at *11.  Conversely, Sampson does not present Fry's statement as direct evidence of discrimination, as she only argues her case through the *McDonnell Douglas* framework.

For her part, Sampson takes Mercy Willard to task for failing to cite case law from Ohio courts in support of its argument that evidence of incidents occurring after Sampson was terminated are not relevant. (Doc. No. 99 at 10 ("Defendants cite no case within the Ohio[ ] federal or state court systems to support their argument on this point.")). Regrettably, neither does Sampson, as she cites only to a case from the Eastern District of Michigan in which the plaintiff brought sex discrimination claims under Title VII and the Michigan Elliott-Larsen Civil Rights Act. *See Kurth v. City of Inkster*, No. 10-11973, 2011 WL 5983999 (E.D. Mich. Nov. 30, 2011).

Finally, and as I noted above, Sampson misconstrues the Defendants' answer to an interrogatory in which the Defendants agreed Sampson correctly identified the formal names of the defendant corporations. (Doc. No. 92 at 5). There is no reasonable basis for equating this answer with an admission of liability.

The parties' summary judgment briefing contains numerous additional instances of bickering and belittling commentary. These types of comments and arguments are not helpful to the resolution of the legal issues in this case and are inconsistent with the standards of professional practice expected in this courthouse. Following the entry of judgment on the parties' summary judgment motions and after consultation with counsel, I will enter a revised trial order, which will set deadlines for liminal motions and the submission of trial briefs and joint proposed jury instructions. I expect that the troubling issues I have laid out above will not resurface in the parties' future court filings.

## V.    CONCLUSION

For the reasons stated above, (1) Sampson's motion, (Doc. No. 47), is denied; (2) Mercy Willard's motion, (Doc. No. 45), is granted in part and denied in part; and (3) Mercy Health Partners and Catholic Health Partners' motion, (Doc. No. 43), is granted. Sampson may proceed with her age-discrimination claims under 29 U.S.C. § 621 *et seq.*, and Ohio Revised Code § 4112.02(A) against

17

Mercy Willard.  Her aiding-and-abetting claim under Ohio Revised Code § 4112.02(J) and her claims against Catholic Health Partners and Mercy Health Partners are dismissed.

    So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge
