UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Judy Sampson,  Case No. 3:12cv824

    Plaintiffs

  v.  MEMORANDUM OPINION
AND ORDER

Sisters of Mercy of Williard, Ohio, et al.,

    Defendants


## I.    INTRODUCTION

In Plaintiff Judy Sampson's first motion in limine, (Doc. No. 134), she seeks an order preventing Defendant the Sisters of Mercy of Willard, Ohio, from introducing at trial any evidence concerning the content of conversations between Sampson and Sister Diane Hay, the Chaplain at Mercy Willard Hospital and Defendant's employee. Sampson asserts this evidence must be excluded on account of the clergy-communicant privilege.[1] Defendant opposes Sampson's motion. (Doc. No. 141). Sampson filed a brief in reply. (Doc. No. 148). For the reasons stated below, I conclude it is appropriate to recognize a federal clergy-communicant privilege under Federal Rule of Evidence 501, and that Sampson's communications with Sister Hay fall within that privilege. Sampson's motion is granted.

## II.    BACKGROUND

Sampson formerly was employed as a radiology technician at Mercy Willard Hospital. (*See* Doc. No. 100 at 1-3). Sister Hay is the Chaplain at Mercy Willard and "routinely provide[s] spiritual

---

[1] As the Third Circuit has noted, this privilege also is "referred to as the priest-penitent, clergyman-penitent, [and] communications to clergymen [privilege] . . . ." *In re Grand Jury Invest.*, 918 F.2d 374, 377 n.2 (3rd Cir. 1990).

support to patients, hospital staff[,] and family members." (Doc. No. 45-43 at 1). Sister Hay states she "routinely" talked with Sampson "about things that were bothering [Sampson]" and "[t]here were periods of time when we talked every day." (Doc. No. 45-43 at 1). Sampson states she "routinely" spoke with Sister Hay about her employment and how she was being treated, and that she "spoke to Sister [Hay] in order to get spiritual support and comfort." (Doc. No. 134-1).

### III. STANDARD

Generally, evidence is admissible as long as it is relevant. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence[,] and the fact is of consequence in determining the action." Fed. R. Evid. 401. Testimonial privileges, while generally disfavored, may be found to prohibit the admission of otherwise relevant evidence. *Jaffee v. Redmond*, 518 U.S. 1, 8-9 (1996). In cases involving federal question jurisdiction, claims of privilege are governed by the federal common law, "as interpreted by United States courts in the light of reason and experience" unless the United States Constitution, federal statutes, or rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 501; *Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992).

### IV. ANALYSIS

Defendant states it intends to present evidence "regarding what [Sampson] did not tell [Sister Hay]" concerning how Sampson was treated while employed at Mercy Willard. (Doc. No. 141 at 1) (emphasis removed). In particular, Defendant intends to show Sampson "did not tell Sister Hay she believed she was being disciplined or otherwise treated differently from other employees because of her age, and did not tell Sister Hay that she was told she was too old to cry, took too long to do her work, would put a wrench in the department, or was suffering from memory loss." (Doc. No. 141 at 1). Defendant argues the Sixth Circuit has not and would not recognize the clergy-communicant privilege and, even if the privilege applied in this case, its

evidence should not be excluded because it would not involve the substance of Sampson and Sister Hay's conversations. Sampson argues the clergy-communicant privilege should be recognized under Federal Rule of Evidence 501 and that Defendant should not be permitted to present evidence about what Sampson allegedly did not say to Sister Hay. I agree with Sampson and grant her motion to exclude Sister Hay's testimony.

### A. THE CLERGY-COMMUNICANT PRIVILEGE

While Sampson alleges some claims arising under Ohio law, this case primarily involves a federal question – the Age Discrimination in Employment Act. (*See* Doc. No. 22). Therefore, federal privilege law applies. *Hancock*, 958 F.2d at 1373.

At least one federal circuit court has recognized the clergy-communicant privilege applies through Rule 501. *In re Grand Jury Invest.*, 918 F.2d 374, 382-83 (3rd Cir. 1990). As the Third Circuit noted, a number of federal courts, including the Supreme Court, have impliedly recognized the existence of the privilege as well. *See, e.g., Trammel v. United States*, 445 U.S. 40, 45 (1980) ("The privileges between priest and penitent, attorney and client, and physician and patient . . . are rooted in the imperative need for confidence and trust."); *United States v. Nixon*, 418 U.S. 683, 709 (1974) ("[G]enerally, an attorney or a priest may not be required to disclose what has been revealed in professional confidence."); *United States v. Dube*, 820 F.2d 886 (7th Cir. 1987); and *United States v. Gordon*, 655 F.2d 478 (2nd Cir. 1981). As Defendant notes, the Sixth Circuit has not recognized the clergy-communicant privilege. The fact that the Sixth Circuit and other federal Circuit Courts of Appeal have not recognized the privilege, however, does not prevent its recognition. *See Jaffee*, 518 U.S. at 7-8.

Neither does the assertion that the "clergy-communicant privilege has no firm foundation in common law." *Seidman v. Fishburn-Hudgins Educ. Found.*, 724 F.2d 413 (4th Cir. 1984). Disputes about whether, or the time periods during which, English and American courts recognized the

privilege, while not unimportant, do not answer the question here because the Supreme Court held that Rule 501 permits the recognition of <u>new</u> privileges, not just those which arose in England. *Jaffee*, 518 U.S. at 12-13. The clergy-communicant privilege, of course, is not a new privilege – it has a much lengthier history in case law than the psychotherapist-patient privilege at issue in *Jaffee*. Relatedly, it is notable that no federal circuit court has expressly held the clergy-communicant privilege does not exist in federal law. *Cf. Nilavar v. Mercy Health Sys.–W. Ohio*, 210 F.R.D. 597, 604 (S.D. Ohio 2002) (citing cases from federal circuit and district courts concluding the physician peer-review privilege did not exist in federal common law).

The absence of a federal statute or rule formally acknowledging the clergy-communicant privilege also does not prohibit its recognition. The Court's reasoning in *Jaffee* is particularly persuasive. In *Jaffee*, the Court concluded "reason and experience" justified the recognition of the psychotherapist-patient privilege because (1) the privilege protected the relationship's roots in confidence and trust, (2) the privilege served "public ends," (3) the likely evidentiary benefit of denying the privilege was "modest" because, without confidentiality, the conversations sought would be unlikely to occur, (4) all 50 states had enacted some form of psychotherapist privilege into law, and (5) the psychotherapist privilege was included "among the nine specific privileges recommended by the Advisory Committee in its proposed privilege rules." *Jaffee*, 518 U.S. at 10-14.

These reasons apply with as much weight to the clergy-communicant privilege:

(1) The privilege protects the very foundation of the relationship. *Trammel*, 445 U.S. at 51. ("The priest-penitent privilege recognizes the human need to disclose to a spiritual counselor, in total and absolute confidence, what are believed to be flawed acts or thoughts and to receive priestly consolation and guidance in return.").

(2) The clergy-communicant relationship serves an important social function. *In re Grand Jury Invest.*, 918 F.2d at 383 ("[T]he privilege protecting communications to members of the clergy, like the attorney-client and physician-patient privileges, is grounded in a policy of preventing disclosures that would tend to inhibit the development of confidential relationships that are socially desirable.").

(3) Conversations like the ones between Sampson and Sister Hay may be chilled if not protected. *See Nilavar*, 210 F.R.D. at 608 ("Without the comforting guarantee of absolute confidentiality, it is unlikely that, in the clergy-penitent context, many people of faith would seek penitence or spiritual guidance . . . .").

(4) Every state recognizes the clergy-communicant privilege. *Cox v. Miller*, 296 F.3d 89, 102 (2nd Cir. 2002).

(5) The clergy-communicant privilege was included in the Advisory Committee's proposed privilege rules. *See* Proposed Fed. R. Evid. 506, 56 F.R.D. 183, 247.

The cases Defendant cites in opposition are not persuasive. As Defendant argues, in *Hancock v. Dodson*, 958 F.2d 1367 (6th Cir. 1992), the Sixth Circuit "declined to recognize a federal physician-patient privilege because the privilege did not exist at common law and Congress had not codified it in a federal statute." (Doc. No. 141 at 2). While these considerations may continue to maintain some importance in the Rule 501 analysis, they are not determinative. *See Jaffee*, 518 U.S. at 10-15. Moreover, there is no Sixth Circuit precedent rejecting the clergy-communicant privilege, as determining the existence of the privilege was not necessary for the court to reach its conclusion in *United States v. Bibbins*, 3 F. App'x 251 (6th Cir. 2001). In *Bibbins*, the defendant was a pastor who failed to comply with a subpoena *duces tecum* for documents related to his assistance of one of his parishioners before the E.E.O.C. *Id.* at 252. Bibbins refused to comply because he believed his assistance was protected by the clergy-communicant privilege. *Id.* at 254. The court did not need to determine whether the clergy-communicant privilege existed because, even if the court concluded it did, Bibbins' communications with his parishioner were not made in his capacity as a minister. *See, e.g., Gordon*, 655 F.2d at 486 (holding the clergy-communicant privilege did not apply because the conversations at issue "related to business relationships, not spiritual matters").

I conclude it is appropriate to recognize the clergy-communicant privilege under Rule 501 and the cases set forth above.

**B. APPLICATION OF THE PRIVILEGE**

The party asserting a privilege bears the burden of establishing the privilege applies. *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999). Therefore, Sampson must show her communications were made (1) to a clergy member, (2) in the clergy member's spiritual and professional capacity, and (3) with a reasonable expectation of confidentiality. *In re Grand Jury Invest.*, 918 F.2d at 384; *see also Mullen v. United States*, 263 F.2d 275, 279-80 (D.C. Cir. 1958) (Fahy, J. concurring). Sampson has made this showing. (*See* Doc. No. 134-1).

Defendant argues the privilege should not prevent it from presenting the proffered evidence because Defendant would only ask Sister Hay questions about what Sampson did not tell her, and not questions about the substance of what Sampson told Sister Hay. (Doc. No. 141 at 1-2). This is a distinction without a difference, as Defendant's proposed approach would impermissibly permit the jury to draw inferences about what Sampson said. *See, e.g.,* 24 Fed. Prac. & Proc. Evid. § 5489 (1st ed.) ("privilege bars circumstantial as well as direct evidence of attorney-client communications"). Consider, for example, a case in which a defendant indicted for murder argues the jury should find him not guilty because he acted in self-defense. This defendant had one attorney represent him at the defendant's initial appearance, and a second attorney appointed to represent him in the remaining pre-trial and trial stages. It seems rather uncontroversial that the prosecutor could not call the defendant's first attorney as a witness and ask whether the defendant ever told the first attorney that he acted in self-defense. Similarly, Defendant will not be permitted to ask Sister Hay what Sampson did and did not tell her when Sampson came to Sister Hay for spiritual advice and support.

## V. CONCLUSION

For the reasons stated above, Sampson's first motion in limine, (Doc. No. 134), is granted. Defendant may not present evidence concerning Sampson's confidential communications with Sister Hay.

So Ordered.

s/Jeffrey J. Helmick<br>
United States District Judge