UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Judy Sampson,　　　　　　　　　　　　　　　Case No. 3:12 cv 824

　　　　Plaintiff

　　v.　　　　　　　　　　　　　　　　　　MEMORANDUM OPINION
　　　　　　　　　　　　　　　　　　　　　　& ORDER

Sisters of Mercy of Willard, Ohio, et al.,

　　　　Defendants

## I.　INTRODUCTION

Before me are six motions in limine filed by Defendant the Sisters of Mercy of Willard, Ohio, (Doc. No. 107, 108, 109, 110, 113, and 125), and two motions in limine filed by Plaintiff Judy Sampson, (Doc. No. 135 and 136). For the reasons stated below, Defendant's first, fourth, and seventh motions in limine are granted in part and denied in part; Defendant's second, third, and eighth motions in limine are denied; Sampson's second motion in limine is granted; and Sampson's third motion in limine is denied as moot.

## II.　BACKGROUND

Sampson formerly was employed as a radiology technician at Mercy Willard Hospital. (*See* Doc. No. 100 at 1-3). Defendant terminated her employment "for continued occurrences of failure to satisfactorily perform the responsibilities of her position." (Doc. No. 45-3 at 1). During the first 20 years of Sampson's employment, she received one informal disciplinary notice. During the last 25 months of her employment, Sampson received 26 informal employee discussions, 2 verbal

warnings, 2 written warnings, and 3 90-day action plans. Sampson contends this dramatic increase in disciplinary actions against her was the result of age discrimination by her supervisor, Barbara Fry. Defendant disputes this, and asserts each instance was warranted due to a violation of its policies. After conducting discovery, the parties filed cross-motions for summary judgment. Those motions resolved some of Sampson's claims but her age discrimination claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Ohio Revised Code § 4112.02(A) remain. In preparation for trial, the parties have filed various motions in limine, including those I discuss below.

### III. STANDARD

While not explicitly addressed in the Federal Rules of Evidence or Civil Procedure, motions in limine "may be directed toward barring specified evidence or argument and may be based on any of the grounds available under the Federal Rules of Evidence." 3 *Moore's Federal Practice* § 16.77[4][d][ii] (Matthew Bender 3d ed.). The practice of liminal rulings "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *see also United States v. Browner*, 173 F.3d 966, 970 (6th Cir. 1999) ("The Federal Rules of Evidence, the Federal Rules of Criminal and Civil Procedure and interpretive rulings of the Supreme Court and this court all encourage, and in some cases require, parties and the court to utilize extensive pretrial procedures – including motions in limine – in order to narrow the issues remaining for trial and to minimize disruptions at trial."). Motions in limine are generally used to ensure evenhanded and expeditious management of trials as the "prudent use of the in limine motion sharpens the focus of later trial proceedings and permits the parties to focus their preparation on those matters that will be considered by the jury." *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997).

The party moving to exclude evidence has the burden of establishing the inadmissibility of the evidence for any purpose. *Mason v. City of Chicago*, 631 F. Supp. 2d 1052, 1056 (N.D. Ill. 2009)

2

(citation omitted). The trial court is afforded broad discretion in such a ruling, *Branham v. Thomas Cooley Law Sch.*, 689 F.3d 558, 560 (6th Cir. 2012), or its decision to defer ruling until the evidence unfolds at trial. *Graves v. District of Columbia*, 850 F. Supp. 2d 6, 11 (D.D.C. 2011) (citations omitted).

Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded. The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine. See *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989) (citation omitted). The Supreme Court has noted the provisional nature of liminal rulings as "the judge may always change his mind during the course of trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) (citation omitted). Where the evidence unfolds different from the proffer, sufficient to cause the issue to be revisited, the court is "free, in the exercise of sound judicial discretion, to alter a previous in limine ruling." *Luce*, 469 U.S. at 41-42.

### IV. ANALYSIS

I already have issued a decision on Sampson's first liminal motion. (Doc. No. 157). Defendant has withdrawn its fifth and sixth liminal motions following discussions with Sampson. (Doc. No. 159).

As a threshold matter, the admissibility of evidence at trial is governed by Federal Rules of Evidence 401, 402, and 403. Generally, evidence is admissible as long as it is relevant. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence[,] and the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence nonetheless may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

A. **DEFENDANT'S FIRST MOTION IN LIMINE**

Defendant seeks an order limiting Sampson to "presenting evidence at trial only which directly pertains to the specific grounds for which [she] was disciplined and which reflects timely observations of [her work performance.]"  (Doc. No. 107 at 1).  Specifically, Defendant seeks to limit the topical and temporal scope of testimony by Sampson's former supervisors and co-workers.  (Id.).  Defendant also argues Sampson only may argue its proffered reasons for terminating her were insufficient to motivate her dismissal, and not that those reasons had no basis in fact or did not actually motivate her dismissal.  (Doc. No. 128 at 1-4).  Defendant's motion is granted in part and denied in part.

As an initial matter, my summary judgment opinion does not limit the evidence Sampson may present to establish pretext.  *See Schachner v. Blue Cross and Blue Shield of Ohio*, 77 F.3d 889, 894 (6th Cir. 1996) ("The law of the case doctrine is not so rigid that it requires a judge to follow a prior ruling, which is not a final order and has not been the subject of an appeal, as if the issue is *res judicata*.") (citing *Cale v. Johnson*, 861 F.2d 943, 947 (6th Cir. 1988)).  My observation that Sampson had not met the requirements of the typical first two categories of pretext was not a ruling, as it was not essential to the resolution of the parties' cross-motions for summary judgment.  Moreover, my summary judgment ruling itself was not a final appealable order.  *See* Fed. R. Civ. Pro. 54; *Jefferson v. Lewis*, 594 F.3d 454, 459 (6th Cir. 2010) ("The denial of a summary judgment motion usually presents neither a final appealable order nor an appealable interlocutory order.") (quoting *Floyd v. City of Detroit*, 518 F.3d 398, 404 (6th Cir. 2008)).  My observation that Sampson's summary judgment briefing did not establish certain avenues of proving pretext does not prohibit her from presenting evidence in pursuit of those avenues at trial.

In order to prevail, Sampson must convince the jury that Defendant's proffered reasons for terminating her employment were merely pretexts for age discrimination.  Thus, while the evidence she presents must be relevant to proving the ultimate question for the jury, the law does not limit

4

her merely to attempting to rebut the minutiae of those proffered reasons. While Sampson will not be permitted to argue she was a nice person and so Defendant should not have disciplined or terminated her, evidence that she capably performed her work before Fry became her supervisor is relevant to the issue of what led to the disciplinary events – Sampson's errors and declining abilities, Fry's discriminatory belief about older employees, or some other reason.

I agree, however, that not every positive comment or review Sampson received during her employment at Mercy Willard is relevant to the pretext analysis. Therefore, evidence concerning Sampson's work performance will be limited to the period of time in which Sampson held the Lead CT Technologist position or performed substantially-equivalent duties. *See Kelly v. U.S. Steel Corp.*, 2012 WL 5467759, at *2 (W.D. Penn. Nov. 9, 2012) (admitting evidence of plaintiff's performance in the position from which he was fired originating up to eight years prior to his termination).

### B. DEFENDANT'S SECOND MOTION IN LIMINE

In its second motion in limine, Defendant seeks an order prohibiting Sampson from introducing evidence that Fry stated Sampson was (1) "too slow" or "not fast enough" and (2) "too old to cry." (Doc. No. 108 at 1). Defendant contends the former constitute stray remarks which are too ambiguous to support an inference of discrimination, while the latter is a common phrase in popular culture that is not admissible unless Sampson can show the comment was related to the decision-making process, was not an isolated remark, and was proximate in time to her termination. (Doc. No. 108 at 4, 8).

"Age-related comments referring directly to the worker may support an inference of age discrimination." *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993); *see also McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990) (concluding comments about the length of time plaintiff had been with the company and that the company's oldest salesperson should be replaced with a younger, cheaper salesperson, as well as statements that plaintiff's "supervisory techniques were outdated," raised an inference of

discrimination). "[R]emarks by those who did not independently have the authority or did not directly exercise their authority to fire the plaintiff, but who nevertheless played a meaningful role in the decision to terminate the plaintiff, [are] relevant." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354-55 (6th Cir. 1998)  "[W]hen assessing the relevancy of an allegedly biased remark where the plaintiff presents evidence of multiple discriminatory remarks or other evidence of pretext, we do not view each discriminatory remark in isolation, but are mindful that the remarks buttress one another as well as any other pretextual evidence supporting an inference of discriminatory animus." *Id.*, 154 F.3d at 356.

Sampson testified during her deposition that Fry frequently told Sampson she was "too slow" or was not "moving fast enough," and that Fry told other members of the Mercy Willard management team that Fry thought Sampson has suffering from memory loss. (*See* Doc. No. 53-1 at 172-74). Moreover, the fact that the phrase "too old to cry" is common in popular culture and therefore is not per se discriminatory does not mean it may not support an inference of discrimination. Sampson testified Fry told her she was too old to cry and "too old to act like [she] was acting." (Doc. No. 53-1 at 171). Without question, Fry played a meaningful role in Sampson's termination, as she assessed the disciplinary actions that ultimately led to her dismissal. These repeated comments, combined with evidence Defendant did not discipline at least one younger employee who made substantially-similar errors as those Sampson allegedly made, support an inference of unlawful discrimination. *See Chattman v. Toho Tenax Am. Inc.*, 686 F.3d 339, 349 (6th Cir. 2012).

Additionally, Defendant's interpretation of the permissible timing for evidence of discrimination is too restrictive. Defendant identifies as the reasons for Sampson's termination the formal and informal disciplinary steps it assessed against Sampson in the approximately two years prior to her dismissal. (*See* Doc. No. 94 at 4, 6-8). Sampson

6

contends these disciplinary actions were motivated by age discrimination. Therefore, because the basis for Sampson's termination arose over a period of time, logic, as well as the Federal Rules of Evidence, dictates that Sampson should be permitted to present evidence of discrimination during that time period, including evidence that Fry told Sampson she was too slow, not moving fast enough, or was too old to cry. Defendant's motion is denied.

### C. DEFENDANT'S THIRD MOTION IN LIMINE

In Defendant's third motion in limine, it seeks an order prohibiting Sampson from presenting evidence (1) she was the oldest Tech in the Radiology Department and (2) Fry "fostered a friendlier environment for younger employees." (Doc. No. 109). Sampson argues evidence supporting both of those contentions is relevant and admissible. I agree, and deny Defendant's third motion in limine.

Defendant contends the fact that Sampson was the oldest person in her department "is neither essential nor relevant to proving [her] age discrimination claim – let alone proving pretext . . . ." (Doc. No. 109 at 4). Defendant also argues that even if it were relevant, it would be unduly prejudicial because it would "create a false inference of discrimination." (Doc. No. 109 at 5).

I conclude it would be impractical to prohibit evidence that Sampson was the oldest technologist in her department. As Defendant concedes, Sampson's age during the events at issue in this case is relevant, as she must prove she was a member of the class protected by the ADEA. (Doc. No. 130 at 3). The parties will present evidence regarding co-workers younger than Sampson, and the jury quite possibly will draw the inference that Sampson in fact was the oldest employee in her department. Defendant has not shown there is a danger that permitting Sampson from offering evidence, or her attorneys from stating, that she was the oldest person in her department would cause Defendant unfair prejudice or that any unfair prejudice substantially outweighs the probative value of the evidence.

7

Moreover, I do not agree exclusion is the proper remedy for any risk of unfair prejudice, particularly in light of the strong possibility the jury will correctly infer Sampson was the oldest person in her department. Defendant may propose a jury instruction clarifying that Sampson's status as the oldest person in her department is not conclusive proof of age discrimination.

I also conclude Sampson will be permitted to offer evidence Fry fostered an environment that was friendlier to younger employees. Such evidence, if the jury believes it, is circumstantial proof Fry disliked and treated Sampson differently because of her age. While, in opposing Defendant's summary judgment motion, Sampson argued this point through reference to Carla Wilson's deposition testimony, she is not limited to presenting only that evidence at trial. Additionally, *Eke v. CaridianBCT, Inc.*, and *Chavez v. URS Federal Technical Services, Inc.*, are distinguishable. In both of those cases, which were decided at the summary judgment stage, the courts concluded the plaintiffs could not establish the employers' proffered reasons were pretexts for discrimination because the record showed the plaintiffs' supervisors favored some employees over other employees without regard to the protected status of those employees. *See Eke v. CaridianBCT, Inc.*, 490 F. App'x 156, 167-68 (10th Cir. 2012) (granting summary judgment on age and sex discrimination claims where record showed, at most, one supervisor was friendlier with male employees than female employees, while other supervisors treated specific younger female employees more favorably); *Chavez v. URS Fed. Tech. Servs., Inc.*, 504 F. App'x 819, 822 (11th Cir. 2013) (granting summary judgment where record showed plaintiff's supervisor "favored employees of both sexes"). Defendant has not identified similar evidence in this case.

### D. DEFENDANT'S FOURTH MOTION IN LIMINE

Defendant seeks an order excluding "any evidence derived from its Safecare and Quantros reporting systems," arguing any probative value of that evidence is substantially

8

outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. (Doc. No. 110 at 1). Defendant also contends the evidence derived from those systems need not be introduced because any relevant information from those systems may be presented through employment files and witness testimony. Sampson contends the incident reports are admissible to show Defendant treated comparable employees more favorably and will explain the absence of disciplinary notices in those comparators' employment files. I conclude the Safecare and Quantros records are admissible only in limited circumstances and therefore grant Defendant's motion in part and deny it in part.

Defendant has a policy encouraging its employees to report safety problems and medical errors with the purpose of reducing those problems and errors and improving the quality of care provided at its facility. (Doc. No. 110-1). That policy provides that employees who self-report errors within 24 hours of discovering the error "are not subject to disciplinary actions unless" specified circumstances exist. (Doc. No. 110-1 at 2). As a result, the mere fact that one of Sampson's younger co-workers made a similar error as Sampson but was not disciplined does not necessarily mean that co-worker is similarly situated. If the co-worker timely self-reported and one of the six specified circumstances did not exist, Defendant's policy expressly states the co-worker would not be disciplined. If this scenario is present – if Defendant's policy precluded disciplinary action for a given error – then Defendant's failure to discipline that co-worker would not support an inference of discrimination.[1] Therefore, I conclude evidence concerning the number of reports logged in the Safecare and Quantros systems, as well as evidence concerning events in which Defendant complied with its policy, would cause Defendant undue prejudice and could mislead the jury.

---

[1] Unless, theoretically, Sampson could show she was disciplined in violation of this policy while younger employees were not.

9

If, however, Sampson can show Defendant did not follow this policy in connection with errors by some of Sampson's younger co-workers – for example, by overlooking a younger co-worker's repeated failure to correct errors – the Safecare and Quantros records may be admissible, provided the information included in those files cannot be presented from any other source. If necessary, I will address Defendant's concerns about the format in which the Quantros information might be presented, as well as the jury's potential difficulty in understanding that format, at a later time.

### E. DEFENDANT'S SEVENTH MOTION IN LIMINE

Defendant seeks an order (1) prohibiting Sampson from introducing evidence to show Defendant did not conduct an independent investigation into the grounds for her termination and (2) permitting Defendant to introduce evidence of a verbal warning Sampson received on September 21, 2009. (Doc. No. 113). Sampson contends Defendant's failure to conduct an investigation is relevant and admissible. She does not oppose the admission of the verbal warning. Defendant's seventh motion in limine is granted in part and denied in part.

Defendant contends Sampson should not be permitted to present evidence that Defendant failed to conduct an independent investigation after Sampson complained to three members of Defendant's management team[2] about how Fry was treating her. Defendant contends it had no reason or duty to conduct an independent investigation because Sampson did not complain she was being treated unfairly on the basis of her age. (Doc. No. 113 at 7). Defendant contends it had an honest belief that Sampson's disciplinary and performance history in the approximately-two years prior to her dismissal was a proper reason to terminate Sampson's employment, and therefore it had no duty to conduct a

---

[2] Those individuals are Lynn Detterman, President and CEO of Mercy Willard, Chris Rizzo, rural division senior director of professional services, and Diana Olson, Chief Human Resources Officer at Mercy Willard. (Doc. No. 48-1 at 7; Doc. No. 51-1 at 4; Doc. No. 47-11 at 11).

10

further investigation. (Doc. No. 113 at 6-7). I find this argument unpersuasive, because it necessarily requires the claim-defeating conclusion that Defendant in fact had an honest belief in its proffered reason for Sampson's termination.

An employee is unable to establish pretext if the employer "has an 'honest belief' in the nondiscriminatory basis upon which it has made its employment decision . . . ." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530-31 (6th Cir. 2012) (citing *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001)). "The employer's claim of honest belief is necessarily tied to the nature of its investigation and disciplinary decision process." *Tingle*, 692 F.3d at 531. Even if an employer does not have a free-standing duty to formally investigate the circumstances offered to support an adverse employment action, the employer must show it reasonably relied on the particularized acts before it at the time the employer took the adverse employment action. *See Braithwaite v. Timkin Co.*, 258 F.3d 488, 494 (6th Cir. 2001). While the law does not categorically require an employer to conduct an investigation before terminating an employee, it also does not render the absence of an investigation irrelevant or inadmissible. Defendant's decision not to conduct a formal, independent investigation into Sampson's complaints of unfair treatment is relevant to the jury's determination of whether Defendant's decision-making process was reasonable or unreasonable.

I am not persuaded Defendant faces a danger of unfair prejudice if Sampson attempts to emphasize Defendant's failure to conduct an independent investigation. Defendant will be able to present evidence explaining why it thought such an investigation was unnecessary, and the jury instructions will explain the contours of the honest belief rule. Defendant's motion to exclude evidence concerning the absence of an independent investigation into the grounds for Sampson's termination is denied.

11

As I noted above, Sampson does not oppose the admissibility of the September 21, 2009 verbal warning. Therefore, Defendant's motion to admit evidence of this warning and the circumstances underlying it is granted.

### F. DEFENDANT'S EIGHTH MOTION IN LIMINE

In its eighth motion in limine, Defendant seeks to prohibit Sampson from introducing evidence regarding incidents which occurred after Sampson's employment at Mercy Willard was terminated. Defendant contends this evidence is irrelevant as a matter of law because the evidence cannot prove Defendant's motivation at the time it terminated Sampson. Defendant also contends post-termination incidents reports from its quality improvement systems are irrelevant because the employees involved in those reports are not similarly situated to Sampson because they self-reported their errors, the errors were less serious than those for which Sampson was disciplined, or the errors were different than those Sampson committed. Sampson contends there is not a bright-line rule prohibiting the use of post-termination evidence to establish an employer's discriminatory motivation and that the question of whether potential comparators are similarly situated is not an appropriate question for a liminal motion. I conclude post-termination evidence may be relevant to Defendant's motivation for disciplining and ultimately terminating Sampson, and that Defendant has not shown the probative value of post-termination evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or undue delay.

Defendant contends that post-termination evidence is irrelevant pursuant to *Tibbs v. Calvary Unit. Methodist Church*, 505 F. App'x 508 (6th Cir. 2012). *See id.* at 515 (rejecting as irrelevant three memos written by plaintiff's former supervisor seven months to two years after her termination). *Tibbs*, however, was not the Sixth Circuit's first pass at the issue of post-termination evidence, and the earlier-in-time cases establish there is not a bright-line rule regarding this type of evidence.

In *Thompson v. UHHS Richmond Heights Hosp., Inc.*, 372 F. App'x 620 (6th Cir. 2010), the district court granted the defendant's motion for summary judgment on Thompson's Title VII race

12

discrimination claim. The Sixth Circuit reversed, concluding Thompson's "corroborated accusations of patterns of discriminatory behavior, <u>the post-termination comments</u> [of her former boss], and the evidence that Thompson was more qualified than [her replacement] create a reasonable inference" that the defendant's proffered reason for discharging Thompson was a pretext for discrimination. *Id.* at 626 (emphasis added).

Post-termination evidence also may be relevant to a plaintiff's claim for punitive damages under Title VII. *West v. Tyson Foods, Inc.*, 374 F. App'x 624, 636 (6th Cir. 2010). Nevertheless, this type of evidence is not categorically relevant. A court's determination of the relevance of post-termination evidence must take into consideration the type of claim the plaintiff presents. *See id.* at 636 (concluding post-dismissal evidence was not relevant to the plaintiff's constructive-discharge claim because it could not be used to show defendant had "an attitude of permissiveness" about the events leading up to the plaintiff's constructive discharge). Post-termination evidence may be relevant to a discrimination claim "because an employer can harbor a discriminatory motive on an ongoing basis; therefore, post-termination comments can provide evidence that the employer had a discriminatory animus all along and that the firing was discriminatory . . . ." *Hilden v. Hurley Med. Ctr.*, 504 F. App'x 408, 415-16 (6th Cir. 2012).

I disagree with Defendant's contention that the proffered post-termination evidence is not relevant because Defendant's discipline and termination decisions "could not have been motivated by knowledge [Defendant] did not yet possess." (Doc. No. 125 at 4) (quoting *Kaveler v. U.S. Bancorp Ins. Serv., LLC*, 2008 WL 2414858, at *2 (S.D. Ill. June 12, 2008)(citing *Cullen v. Olin Corp.*, 195 F.3d 317, 324 (7th Cir. 1999)). The "could not have been motivated" language arose in *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352 (1995). *See id.* at 360. In *McKennon*, the defendant conceded it had terminated the plaintiff on the basis of her age, but argued it was not liable for discrimination because it later discovered the plaintiff had violated company policies and those violations justified her discharge. *Id.* at 355. The Supreme Court largely rejected this argument, noting the only

13

motivation for McKennon's dismissal, at the time of her dismissal, was discrimination, and the later-discovered legitimate reason did not retroactively negate that impermissible reason for her employer's termination of her employment. *Id.* at 359-60. Instead, the Court held after-acquired evidence of conduct warranting dismissal could limit the availability of certain remedies, such as reinstatement and front pay, and also impact the calculation of back-pay. *Id.* at 361-62.

That reasoning does not apply in this case because the post-termination evidence at issue does not involve a new or different alleged motivation for Sampson's dismissal. Instead, it may show Fry engaged in a pattern of conduct over a period of years in which she treated similar misconduct by younger employees less harshly than similar misconduct by older employees and thus support a reasonable inference of discrimination. From this perspective, I find *Foster v. Spring Meadows Health Care Center, LLC*, 2013 WL 829363 (M.D. Tenn. March 6, 2013), more persuasive than *Kaveler* or *Cullen*. In *Foster*, the district court denied the employer's motion for summary judgment after concluding the plaintiff had raised a material question of fact as to whether a younger employee was treated more favorably. The defendant terminated Foster for leaving work during her shift without approval and for insubordination. *Foster*, 2013 WL 829363, at *3. Foster claimed her termination was discriminatory, because a younger coworker was not terminated after two write-ups for incidents which the district court found could appropriately be considered insubordination and one write-up for failing to obtain a supervisor's approval before finding another employee to cover her shift. *Id.* at *8. Notably, two of these three incidents occurred at least 22 months after Foster was terminated. *Id.* at *3, *8.

The fact that Defendant's quality improvement systems rely on self-reporting does not render information contained in those systems irrelevant. Defendant's policy plainly limits the scope of the safe harbor offered to self-reporting employees, as employees must self-report within 24 hours of discovering an error. (Doc. No. 110-1 at 2). Moreover, the policy identifies six circumstances in which an employee who self-reports within 24 hours still might be subject to

14

discipline. (Id.). Defendant's policy also expressly provides that disciplinary action is appropriate for employees who have failed to remedy past errors. (Doc. No. 110-1 at 1). Defendant is likely to argue at trial that Sampson was ultimately terminated due to her failure to comply with the three action plans and to improve her work performance. Evidence, for example, that significantly younger employees also failed to remedy past errors but were treated differently than Sampson is relevant to the determination of whether Defendant discriminated against Sampson on the basis of her age.

I agree with Defendant, however, that anonymous or unidentified comparators are not probative of Defendant's motivation due to the absence of evidence establishing the age of those unidentified comparators. Sampson may not introduce evidence of alleged comparators unless she can present evidence of the names and ages of those employees.

Finally, I conclude the fact-intensive inquiry necessitated by Defendant's arguments that the post-termination incidents do not involve similarly-situated comparators is best undertaken at a later time. Sampson may decide not to introduce evidence regarding some or many of the post-termination incidents disclosed in discovery and therefore this inquiry is premature. Defendant's eighth motion in limine is denied.

### G. SAMPSON'S SECOND MOTION IN LIMINE

Sampson seeks an order prohibiting Defendant from making any reference or presenting any evidence that it is a non-profit hospital or a charitable institution. (Doc. No. 135). Sampson contends this information is not relevant to the claims at issue and, even if it were relevant, would be unfairly prejudicial to her because jurors may misunderstand the terms "nonprofit" and "charitable" and then be reluctant to hold Defendant liable. (Doc. No. 135 at 1-3). Defendant contends this information is background evidence concerning Defendant's identity and will not cause Sampson undue prejudice. (Doc. No. 142 at 1-2).

15

Defendant's nonprofit or charitable status is not relevant information for the jury and raises a substantial possibility of undue prejudice. This status is extraneous to the claims the jury will be asked to decide and will not be admitted. While it is possible some jurors will know of the connection between Mercy hospitals and the Catholic faith, or that many hospitals are considered nonprofit entities, the members of the jury will be instructed before opening statements and following the close of evidence that they may not permit bias, sympathy, or prejudice influence their verdict. Sampson's second motion in limine is granted.

### H. SAMPSON'S THIRD MOTION IN LIMINE

In her third motion in limine, Sampson seeks to prohibit Defendant from presenting evidence concerning her unrelated medical conditions, in particular her chronic liver disease caused by diabetes. (Doc. No. 136). Defendant indicated it does not intend to present evidence about Sampson's condition, but asked that a ruling on this motion be stayed until the parties' expert witnesses had had an opportunity to consider whether this condition could have any impact on Sampson's work performance or her emotional-distress claims. (Doc. No. 143 at 1). The parties have exchanged expert reports, and neither side has indicated this issue will arise at trial. Because Defendant represents it will not present evidence concerning Sampson's unrelated medical condition, Sampson's third motion in limine is denied as moot.

### V. CONCLUSION

For the reasons stated above,

- Defendant's First motion in limine, (Doc. No. 107), is granted in part and denied in part;
- Defendant's Second motion in limine, (Doc. No. 108), is denied;
- Defendant's Third motion in limine, (Doc. No. 109), is denied;
- Defendant's Fourth motion in limine, (Doc. No. 110), is granted in part and denied in part;

16

- Defendant's Seventh motion in limine, (Doc. No. 113), is granted in part and denied in part;

- Defendant's Eighth motion in limine, (Doc. No. 125), is denied;

- Sampson's Second motion in limine, (Doc. No. 135), is granted;

- Sampson's Third motion in limine, (Doc. No. 136), is denied as moot.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge